Agnes L. Dana, Petitioner v. Commissioner.
Dana v. Commissioner
Docket No. 54562.
United States Tax Court
T.C. Memo 1956-228; 1956 Tax Ct. Memo LEXIS 66; 15 T.C.M. (CCH) 1194; T.C.M. (RIA) 56228; October 10, 1956
*66 Edward Pesin, Esq., for the petitioner. Norman A. Peil, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax in the amount of $77,199.49 against petitioner for the year 1949. The sole issue presented for decision is whether a loss with respect to certain Florida real estate occurred in 1949. A stipulation of facts filed by the parties and certain facts stipulated orally by the parties at the hearing are incorporated herein by reference as part of our findings of fact. [Findings of Fact] The petitioner resides in New Jersey. In 1926, during a land boom in Florida, petitioner acquired certain real estate (consisting of two lots, a one-story dwelling and a garage) in Sarasota, Florida, at a total purchase price of $128,125. Thereafter petitioner regularly paid the annual taxes with respect to this property to both the county and city until 1948. She paid the 1947 taxes in May 1948, but the 1948 taxes which became delinquent in May 1949 were never paid by her. Prior to 1937 the property was rented on petitioner's behalf by a Florida real estate agent, but petitioner never *67 received any rents since the agent informed her that they were consumed in paying the operating expenses of the property. About 1937 Claude S. Ginn, a stranger, began to receive rentals from the property. In 1945 the American Surety Company obtained a deed to Ginn's interest in the dwelling (but not the land), based upon a judgment, and, later in 1945 it conveyed to him its interest in the dwelling. Petitioner had placed the property in the hands of real estate agents for sale, and in July 1947 one of the agents negotiated a sale to Lewis Van Wezel for $13,500, receiving a deposit of $1,350. Consummation of the sale was prevented, however, when it appeared that Ginn was claiming title to the property by adverse possession and had been renting it to a Mrs. Kell who was operating a beauty parlor thereon. Thereafter, in June 1948, on advice of counsel, petitioner brought an action in ejectment. A demurrer filed by Ginn was sustained on January 11, 1949, and petitioner thereafter filed an amendment to her declaration. However, neither the original declaration nor the amendment thereto alleged possession by petitioner within a seven-year period as required by Florida law. See Sec. 95.12 *68 F.S.A. (Florida Statutes Annotated). Had the litigation arisen in such manner that Ginn were plaintiff and petitioner the defendant it appears highly doubtful whether Ginn could have prevailed on the basis of adverse possession under Florida law since he had not paid taxes upon the property, see Secs. 95.16-95.19, F.S.A., [1] and therefore could not succeed on the strength of his own title. However, as matters stood, the burden was on the petitioner. Petitioner's Florida counsel, although originally convinced as to the soundness of her position upon the basis of evidence which he thought was available, subsequently learned that such evidence was not available and reached the conclusion that her position could not be supported in the pending suit; he therefore recommended that it be dismissed. Accordingly, the suit was dismissed with prejudice on July 11, 1949. *69 [Opinion] Although we have not recounted all of the evidence, we are satisfied from a study of the entire record that the loss in fact occurred in 1949 and not before. Nor can we accept either of respondent's alternative positions that petitioner had abandoned the property prior to 1949 or that the loss occurred in 1951 when Ginn filed a suit to quiet title and obtained a decree. Plainly, there was no abandonment prior to 1949, and we think there is no merit to the contention that the loss occurred in 1951. Petitioner had entered no appearance in the 1951 suit; Ginn's rights against her had already been adjudicated in 1949; and the 1951 suit appears to have been merely in the nature of a formality that was necessary in order for Ginn to obtain a marketable title. We find as a fact and hold that the loss in question was sustained in 1949. Decision will be entered for the petitioner. Footnotes
1. Although the provisions requiring the payment of taxes appear to have been enacted in 1939 and although they left undisturbed titles obtained prior thereto by adverse possession, we must reject respondent's contention that Ginn had obtained title prior to 1939 by adverse possession since it is our best judgment on the entire record that Ginn's adverse possession did not commence prior to 1937 and that he therefore could not have complied with the seven-year requirement by 1939.↩